JANVIER, Judge.
This workmen’s compensation suit is based on a claim by plaintiff that he now suffers from post-traumatic neurosis which has rendered him totally and permanently disabled and which has resulted from an industrial accident which occurred in and arose out of his employment in the hazardous business of his employment.
The defendants are the Quality Construction Co., Inc., the employer, and its liability insurer, United States Fidelity & Guaranty Company.
In addition to claiming maximum compensation for 400 weeks, plaintiff claims that he is entitled to an attorney’s fee and to the penalty which is allowed when compensation payments which are obviously due are arbitrarily and capriciously withheld.
The defendants admit the occurrence of the accident and the temporary disability of the plaintiff, but they aver that compensation was paid him during the entire period of disability and that he no longer suffers any disability as the result of the accident.
There was judgment in favor of plaintiff for ■ $35 per week for a period not in excess of 300 weeks, but denying him attorney’s fee and the penalty.
The District Judge, in his reasons for judgment, said that he was basing the award on what he believed to be disability, but that he was “not convinced that the total disability is permanent.”
Both defendants have appealed and by answer to the appeal plaintiff renews his claim for a judgment based on total, permanent disability and for an attorney’s fee and the penalty.
The accident occurred on April 21, 1958, while plaintiff, carrying a heavy board with another employee, slipped and fell to the ground. He was taken by ambulance to the office of a doctor in a nearby town and was then transferred to the Touro Infirmary, in New Orleans, by ambulance. He was later again transferred to another hospital in New Orleans where he remained for about three weeks. He was under treatment until January 12, 1959, when he was discharged as able to return to work and was paid compensation to that time. His claim now is based on the opinion of two psychiatrists who feel that, because of the accident, he now suffers from post-traumatic neurosis and cannot do the work he formerly did. The diagnosis of these two -experts is based largely on their belief that the plaintiff cannot avoid certain tremors in one of his hands and a numbness in other parts of his body.
On behalf of defendants we find the testimony of a psychiatrist and a general *153 surgeon and we find the reports of a specialist in orthopedics who was first called by the plaintiff and who is of the opinion that plaintiff can return to work. No one •of these three found the symptoms which are now pointed to by the two other psychiatrists as evidencing the neurotic condition. We thus have two psychiatrists who believe that he is now disabled by neurosis and one psychiatrist, a surgeon, and an orthopedic specialist who feel that he is not disabled.
It is conceded, as of course it must be, that in diagnosing neurosis much reliance must be placed on the statements of the person who claims to be so suffering.
Dr. William R. Sorum, a psychiatrist, was •asked:
“ * * * is it not true that a man’s credibility is of paramount importance in determining whether he has a true neurosis or feigning the neurosis, is that not true?”
and he answered: “Yes.”
Dr. Arthur W. Epstein admitted that the symptoms to which he pointed might be simulated, and said: “ * * * you do have to consider his credibility * * * ”. For this reason it is extremely important that, in all cases in which post-traumatic ■neurosis is claimed, the testimony and the •actions of the claimant must be carefully scrutinized.
In Hicks v. Royal Indemnity Company, La.App., 80 So.2d 553, 558, in referring to such a case, we said:
“ * * * However, in such a case the evidence must be carefully scrutinized because of the fact that compensation neurosis is so closely akin to post traumatic neurosis that the very faint line between them is so indistinct that it is extremely difficult to determine on which side of the line each particular case should be placed. * * ”
One of the strange features of this case is that plaintiff first consulted Dr. Irvin Cahen, admittedly an expert in the field of orthopedics, and that Dr. Cahen found none of the symptoms now relied on by plaintiff. At that time plaintiff did not suggest anything which indicated a neurotic condition, his claim was based entirely on a claimed orthopedic condition. It was only • when he was discharged as able to return to work that he suddenly developed the tremors and the numbness which he now exhibits on occasion. We use the words “on occasion” because although the District Judge, in his reasons for judgment, remarked that the tremors which he himself noticed had been continuous during the entire time of the two-day trial, yet no one of the three doctors, Dr. Faust, Dr. Cahen or Dr. Sorum, found either the numbness or the tremors.
While it may be a difficult thing to accomplish, it is quite possible that a person, who is trying to convince a Judge that he is suffering from inability to control tremors, may intentionally continue the tremors even for so long a time, and we think too that a person who is bent on recovering for compensation neurosis and who thinks that it is necessary to avoid showing pain under certain tests may be able to resist the pin prick test upon which considerable reliance is placed.
When Dr. Faust was asked whether it might be possible to conscientiously simulate tremors, he said that it might be possible and that certainly during his many examinations he had seen no tremors, “such as I have seen here this morning.”
Dr. Epstein, too, admitted that numbness and tremors may be simulated.
It is thus evident that there is a vast disagreement among the several doctors on the question of whether the symptoms referred to exist in reality.
It is true that the question of whether neurosis exists is in the field of the psychiatrist rather than that of the orthopedist or of the general surgeon, but we cannot avoid the conclusion that the symptoms re *154 lied upon here may be noticed as well by a surgeon or a general practitioner. Surely any one of them might notice whether there were tremors or whether there was a numbness when he examined the patient. We have no doubt at all that when the claimant was examined by Dr. Sorum, Dr. Faust and Dr. Cahen he did not exhibit the symptoms to which the psychiatrists point as evidencing neurosis.
It is remarkable too that there was no lay testimony of relatives, or neighbors, or friends who could surely have said whether they noticed the tremors which it is now claimed cannot be controlled by plaintiff and which are constant. Usually in such cases many relatives and friends are presented.
Most impressive, however, of all is the obvious inability or unwillingness of plaintiff to tell the truth whenever he felt that his chances of recovery might be adversely affected by admitting what he had previously said, or had previously exhibited to doctors. On innumerable occasions he changed statements and took the position that the doctors to whom he had made the previous statements were not telling the truth.
He testified that he had fallen from a scaffold about 4i4 feet high, yet he made no such statement to any of the doctors to whom we have referred and who examined him. The evidence leaves no doubt whatever that he did not fall from a scaffold. He merely slipped while carrying a board walking on the ground. This incident is of no great importance, but when added to all of the others it indicates a determination to bolster his case by misstatements whenever possible.
To go a little further along the road of untruthfulness, plaintiff said that he had been knocked unconscious and had remained in this condition until he arrived at the hospital. The record leaves no doubt at all that this is not true. His fellow-employee who had been carrying the board with plaintiff said that he had talked to him immediately after the accident and. when asked whether plaintiff had been “knocked out” at the time, answered, “No.”
Plaintiff insists that he told Dr. Cahen. about the numbness in his leg, yet Dr. Cahen who made a thorough examination and in four reports made no mention whatever of any numbness. Nor did plaintiff' mention any numbness to Dr. Faust.
Most remarkable is the fact that though, he had had at least three previous compensation claims on one of which he had filed suit, claiming to have been totally disabled as a result of a back injury, he made no mention of this suit to any of the doctors who examined him and said that he did not do so because no one of the doctors asked him about it. He lost that earlier suit.
At one part of his testimony he said that the injury upon which that earlier compensation suit had been based had been very slight, but in the suit itself, the record of which is offered in evidence here, he claimed that he had been totally, permanently disabled, and in his testimony in that suit he said that he could not do anything but very light work for two years. Concerning this contention that he had never had any serious earlier back injury, Dr. Faust was asked whether or not he had asked him if he had had any previous back injury, and he answered: “Yes, sir.” He was asked: “What was his statement to you?” and he answered: “That he never hurt his back before.”
Dr. Faust was further asked: “Did'he ever change his statement about another previous back injury?” and he answered: “No, and I specifically asked that question again and he again said he had had no previous back injury.”
Plaintiff now claims that as a result of the accident his sex potency has been very much decreased. Dr. Faust said that when he made his first examination after this accident plaintiff volunteered the informa *155 tion that lie had suffered in that way for many years.
There are many other tests to which plaintiff was subjected and which, according to Dr. Faust, indicate plainly that he was a malingerer. Dr. Faust said that though he claimed to have numbness in one of his legs and used a cane in walking, as a matter of fact he used the cane to “favor” the wrong leg. It is also shown that, though plaintiff claimed he could not stand erect, when he was subjected to certain tests used to determine the truthfulness of statements in that regard, those tests indicated plainly that he could have stood erect had he been willing to do so.
Looking at this record as a whole, we reach the conclusion that plaintiff’s statements as to his disability, his numbness and his tremors, are not based on fact and that he is not'to any extent disabled as a result of neurosis resulting from this accident.
The judgment appealed from is annulled, avoided and reversed, and plaintiff’s suit is dismissed at his cost.
Reversed.